HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL CONTI,

          Plaintiff,

    v.

CORPORATE SERVICES GROUP, INC.,
et al.,

          Defendants.

CASE NO. C12-245RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on the parties' motions in limine.  Dkt. ## 107, 110.  The court GRANTS both motions in part and DENIES them in part.  The parties have divided their motions into several parts (34 parts, to be precise, not counting many subparts).  The court will issue a separate order as to the part of Defendants' motion regarding evidence from the Equal Employment Opportunity Commission ("EEOC").

The court acknowledges that Plaintiff Michael Conti and Defendant Derek Anderson have stipulated to the dismissal with prejudice of all claims Mr. Conti made against Mr. Anderson.  Dkt. # 102.  The clerk shall TERMINATE Mr. Anderson as a party.  Corporate Services Group, Inc. ("CSG"), Stacey Gardner, and Jay Leon are the sole remaining Defendants.

The court also GRANTS the parties' stipulated motion in limine.  Dkt. # 106.  The parties have agreed to exclude four categories of evidence: evidence of the parties'

ORDER – 1

settlement discussions, evidence that Mr. Conti moved to the United States to escape guerilla warfare in Colombia, evidence regarding Mr. Conti's wife's employment, and evidence of Mr. Conti's wife's English language skills.  The court accepts their agreement and will require them to abide by it.  The motion also reveals the parties' agreement to exclude all witnesses from the courtroom except during their testimony. The court's standard practice is to permit a witness to attend trial once the court has excused him or her (*i.e.*, once the witness has completed his or her testimony and the parties have agreed that the witness is not subject to recall).  If the parties have a reason for departing from this practice, they shall explain it to the court at the pretrial conference.

Before addressing each part of the parties' disputed motions, the court makes two preliminary comments.  First, the parties will have six days to select a jury, complete opening statements and closing arguments, and present evidence.  The court will be presiding over another trial beginning on December 10.  The jury may continue to deliberate on December 10 and thereafter, but the parties will complete their presentation of this case to the jury no later than 4:30 p.m. on December 9.  Throughout discovery, dispositive motions, and now these pretrial motions, the parties have demonstrated an extraordinary willingness to raise disputes about virtually everything, from the substantial to the trivial, that might possibly be at issue in this case.  If the parties were actually to raise at trial every factual dispute they raised in their dispositive motions and other pretrial motions as well as these motions in limine, trial would take months.  But the parties will have six trial days, split evenly between them.  They should plan their presentation of evidence accordingly.

Second, Mr. Conti often misinterprets the court's orders on the parties' dispositive motions, especially the court's May 24 order denying virtually every portion of the parties' motions for summary judgment ("SJ Ord.," Dkt. # 81).  A party's burden in

ORDER – 2

opposing a summary judgment motion is simply to present evidence that creates a genuine issue of material fact preventing the court from issuing judgment as a matter of law.  A party seeking summary judgment need only offer enough evidence or argument to show the absence of a genuine issue, thus obligating the opposing party to present evidence.  No party is obligated to come forward with every piece of evidence relevant to a particular issue.  There are numerous instances in which the court noted that one party or the other had presented "no evidence" of a particular fact.  For example, in ruling that a jury could find Defendants' explanation for demoting Mr. Conti to be pretextual, the court observed that "there [was] not a shred of evidence that anyone at CSG had concerns about [Mr. Conti's] English skills prior to June 29."  SJ Ord. at 8.  The court did not rule that Defendants had no evidence of earlier concerns about Mr. Conti's English, it merely ruled that they had not presented any such evidence in support of their summary judgment motion.  No one asked for partial summary judgment that there was no evidence of Defendants' dissatisfaction with Mr. Conti's English skills prior to June 29, 2010, and thus Defendants were not obligated to come forward with evidence to avoid summary judgment on that ground.  Unless a party's failure to present evidence results in summary judgment on an issue, a party is free (barring a separate reason for exclusion) to rely on evidence at trial that was not in the summary judgment record.

## II.  PLAINTIFF'S MOTION IN LIMINE

### A.    Mr. Conti's Termination

Mr. Conti asks the court to exclude evidence or argument that Mr. Conti resigned, as opposed to evidence that Defendants fired him.  The court noted in its summary judgment order that Defendants' insistence that Mr. Conti resigned is curious in light of the email they sent explicitly terminating him.  At the time, the court noted that it was "aware of no evidence that would permit the jury to conclude that Mr. Conti resigned . . . ."  SJ Order at 15 n.6.  Now, Defendants have offered evidence that Mr.

ORDER – 3

Conti claimed that he claimed he "quit" when he applied for unemployment benefits.  In addition, the EEOC determination that is the subject of a separate order summarizes Mr. Conti's complaint by stating that he was "compelled to resign his position . . . ."  That evidence was not before the court previously, and Defendants were not obligated to provide it.  As the court noted in the prior order, Mr. Conti did not make it clear whether he sought summary judgment that he was fired rather than that he resigned or was constructively discharged.  SJ Ord. at 15 n.6.  The court will not preclude Defendants from offering evidence or argument that Mr. Conti resigned, nor will it rule out the possibility that it will be necessary to instruct the jury on the theory of constructive discharge.

**B.    Mr. Conti's Failure to Accept a Job on Defendants' "Outbound" Team is Not Evidence of His Failure to Mitigate Damages.**

For the reasons stated in the summary judgment order, Defendants may not argue that Mr. Conti's failure to accept the lower-paying job on CSG's "Outbound" team is a failure to mitigate damages.  Defendants agree that they will not do so, and opposed this portion of Mr. Conti's motion solely to preserve whatever right they have to appeal the court's summary judgment ruling.

If necessary, the court will instruct the jury that Mr. Conti's refusal to accept the "Outbound" job is not a failure to mitigate damages.

**C.    "Undisclosed" Evidence and Arguments**

Mr. Conti asks the court to exclude any evidence or witnesses that Defendants did not disclose during discovery.  He pinpoints no evidence and identifies no witnesses.  The court denies this part of his motion for that reason.  Mr. Conti is free to object at trial if Defendants attempt to introduce evidence or witnesses that they were obliged to disclose in discovery but did not, but Mr. Conti offers no support for the broad ruling he requests.  Moreover, it appears that the parties have yet to agree on what Plaintiffs did or did not produce during discovery.  The court urges them to resolve these issues before trial

ORDER – 4

begins.  Neither party will be served by wasting trial time with arguments over the past production of evidence.

Similarly, Mr. Conti is free to object if Defendants attempt to rely on arguments supporting affirmative defenses that they did not disclose in response to proper contention interrogatories.  There is again, however, no basis for the broad ruling Mr. Conti requests.

The court also denies Mr. Conti's request that the court strike Defendants' affirmative defenses.  The deadline for dispositive motions expired long ago.  The only ruling the court has made regarding Defendants' affirmative defenses is that they may not argue that Mr. Conti failed to mitigate damages by failing to accept the "Outbound" job.

**D.      Decisionmakers as to Mr. Conti's Transfer and Pay Cut**

The court denies this part of the motion.  A jury will decide who made the decision to move Mr. Conti to a different position with lower pay.

Several parts of Mr. Conti's motion ask the court to limit who Defendants may claim were decisionmakers with respect to adverse actions against him.  The court will deny those requests for the most part, but the court questions whether the parties have an actual dispute on this issue.  Defendants seem largely to agree with Mr. Conti about who was responsible for making decisions about him; they merely wish to present evidence that the people ultimately responsible took into account input from other people.  The court will not prevent them from doing so.

**E.      Reasons for Mr. Conti's Termination**

As the court has already noted, if Defendants failed to disclose either a specific piece of evidence or a specific legal argument in response to a discovery request calling for that evidence or argument, Mr. Conti may object at trial.  In this portion of his motion, Mr. Conti points to no specific evidence or argument.  There is no basis for an advance ruling limiting what evidence or argument Defendants may offer regarding their

ORDER – 5

1  reasons for firing Mr. Conti.  They were not obligated to present all evidence regarding

2  their reasons for firing Mr. Conti during summary judgment.  If Mr. Conti can point to a

3  specific discovery response in which Defendants limited their reasons for terminating Mr.

4  Conti, he can point that out at trial.

5  **F.     Decisionmakers as to Mr. Conti's Termination**

6        The court denies this part of the motion.  A jury will decide who made the

7  decision to fire Mr. Conti.

8  **G.     Ms. Gardner as a Decisionmaker**

9        The court granted summary judgment in Ms. Gardner's favor on Mr. Conti's

10 retaliation claim because there was no evidence that Ms. Gardner knew of the alleged

11 protected activity (Mr. Conti's threat to file an EEOC complaint) that was the basis of

12 that claim.  Dkt. # 82 at 5.  An additional independent basis for that ruling was that there

13 was no evidence that Ms. Gardner had any role in terminating Mr. Conti.  Defendants

14 may not offer evidence or argument to the contrary at trial.  Defendants may, however,

15 argue that Ms. Gardner's earlier evaluations of Mr. Conti played a role in other people's

16 decision to terminate him.

17 **H.     Microsoft's Role**

18       The court denies this part of the motion.  A jury may decide to what extent the

19 input of Microsoft employees played a role in Defendants' adverse actions against Mr.

20 Conti.  The court also declines to exclude an email that Microsoft employee John

21 Schoenstein sent two months after Defendants fired Mr. Conti.  If, as Mr. Conti contends,

22 that email is merely an after-the-fact summary of Mr. Schoenstein's understanding of

23 why Mr. Conti is fired, the court expects that Mr. Conti will be able to demonstrate as

24 much at trial.

25

26

27

28 ORDER – 6

1

2

**I.      Decisionmakers as to Hiring Mr. Conti**

3              The court denies this part of the motion.  A jury will decide who made the

4      decision to hire Mr. Conti and who made decisions about his initial rate of pay and job

5      assignments.

**J.      Evidence From Analyn Bonifacio Regarding Her Meetings with Mr. Conti in**
6              **Late June 2010.**

7              Mr. Conti intends to prove his retaliation claim in part by claiming that he

8      threatened, during a June 29 meeting where Analyn Bonifacio and Ashlie Young told him

9      that he was being demoted, to file a complaint of discrimination with the EEOC.  When

10     Mr. Conti took Ms. Bonifacio's deposition, his counsel asked her a series of questions

11     about this meeting.  Eventually, counsel asked: "[Mr. Conti] told you . . . that this was

12     discrimination and that he was going to go to the EEOC, didn't he?"  In the videotape of

13     the deposition, Ms. Bonifacio plainly answered "Yes" to this question.[1]  Just as she

14     finished that response, her counsel stated:  "Objection.  What time frame are we on right

15     now?"  This exchange followed:

16            Mr. Conti's counsel:           We're at the meeting.

17            Ms. Bonifacio's counsel:       Which meeting?

18            Mr. Conti's counsel:           What other meeting are we talking about right now,
                                             counsel?  Just let me ask my questions.

19            Ms. Bonifacio's counsel:       Vague as to which meeting you're talking about.

20            Mr. Conti's counsel:           You understand what meeting we're talking about,
                                             right?

21            Ms. Bonifacio:                 No, there's two meetings.  There was over the phone.

22

---

23     [1] The transcript of the deposition does not reflect Ms. Bonifacio's "yes" answer.  Mr. Conti was
       apparently unaware of the "yes" answer when he filed his motion in limine. Ten days later,
24     counsel filed a declaration (not a motion) requesting that the court "correct" the transcript based
       on the difference between the video and the transcript.  Counsel deposed Ms. Bonifacio in
25     January 2013, drafted a motion in limine based on a line-by-line recount of the transcript 11
       months later, and declined to review the video until 10 days after that.  If counsel believes that
26     the court will order the transcript "corrected" based on a late-filed declaration that reveals no
       effort to discuss the issue with opposing counsel, he is mistaken.  The video is presumptively
27     admissible at trial, as is the written transcript.  That will suffice to correct any error.

28     ORDER – 7

Bonifacio Dep. at 87.  That exchange led to testimony in which Ms. Bonifacio claimed that in her initial meeting with Mr. Conti, he had not mentioned discrimination or threatened to file a charge with the EEOC.  She then testified that his initial threat of discrimination came later during a telephone conversation with her.  Ms. Bonifacio had no recollection (at least in the excerpts counsel provided) of what day either the meeting or the phone conversation took place.

Mr. Conti insists that Ms. Bonifacio changed her testimony because of her counsel's suggestive objection.  That is possible.  It is also possible that Mr. Conti's counsel was vague as to the timing of her conversation with Mr. Conti where he first mentioned the EEOC or a discrimination claim.  The transcript alone does not provide an unequivocal answer.  If Mr. Conti wishes to convince the jury that Ms. Bonifacio changed her testimony in response to her counsel's coaching, he may do so.  The court will not make that determination for him.

Mr. Conti goes even further, requesting that the court exclude her "coached testimony" and prohibit Defendants from introducing evidence or argument that Mr. Conti's initial mention of discrimination came after his first meeting with Ms. Bonifacio. The court will not do so.  The record permits more than one conclusion about when Mr. Conti first mentioned discrimination or the EEOC, and the court will not prohibit the jury from hearing evidence relevant to that issue.  The jury will decide when Mr. Conti first mentioned discrimination or threatened to file an EEOC charge.

**K.      CSG's Fed. R. Civ. P. 30(b)(6) Deposition**

If Mr. Conti believed that Jay Leon provided inadequate answers as CSG's Rule 30(b)(6) deponent, he should have filed a motion to compel.[2]  Mr. Conti is free to use the

---

[2] Mr. Conti suggests that Mr. Leon gave evasive or inadequate answers because he knew that the deadline to file discovery motions had passed.  The court suggests no opinion on that accusation, although it observes that no one requested an extension of any motion deadline.  Mr. Conti is responsible for his choice to depose Mr. Leon when it was too late to file discovery motions.

ORDER – 8

deposition transcript to impeach Mr. Leon or any other CSG representative, but the court will grant no relief stemming from Mr. Leon's allegedly inadequate answers.

**L.      Evidence of Financial Impact of Adverse Judgment on Defendants**

The court will address this part of Mr. Conti's motion when it addresses Defendants' motion to bifurcate the trial.  *See infra* Part III.13.

The court observes, however, that both in opposition to this motion and elsewhere in the briefing before the court, Defendants announce that CSG has "no insurance coverage," and complain that Mr. Conti's counsel intends to seek a large attorney fee award if Mr. Conti prevails.  This is a dubious attempt at persuasion when directed at the court, but it would be flatly impermissible if directed at the jury.  Unless they first receive explicit permission from the court, the court prohibits Defendants from mentioning their own liability insurance (or lack thereof) or the possibility of an attorney award. Defendants shall instruct their witnesses accordingly.

**M.      Mr. Conti's Prior Bad Acts**

Mr. Conti asks the court to exclude all evidence of his prior "bad acts," as well as evidence of the bad acts of his witnesses.  He does not identify a single bad act, leaving the court with nothing specific to exclude.  The court denies this part of his motion, without prejudice to objections at trial that target specific evidence of prior bad acts.

**N.      Evidence Designed to Elicit Sympathy for Defendants**

Mr. Conti asks the court to prevent Defendants from offering testimony about their emotional distress as a result of this suit and to prevent them from testifying about their personal lives.  It is not uncommon for a witness to testify briefly regarding his or her background, including aspects of his or her personal life that are not strictly relevant to any issue before the jury.  Similarly, a witness's answers will occasionally reveal his or her own feelings about being involved in a heated dispute.  Any party may object if such

ORDER – 9

testimony goes too far afield, but Mr. Conti has presented no reason for the court to wholly exclude it.

**O.      Mr. Conti's Medical Records**

The court will address this portion of Mr. Conti's motion when it addresses Defendants' motion to exclude evidence of Mr. Conti's emotional distress. *See infra* Part III.2.

**P.      Evidence of Mr. Conti's Collateral Sources of Income**

Defendants may not offer evidence or argument regarding the amount Mr. Conti received in unemployment benefits after they fired him, nor may they offer evidence about the amount of any other collateral source of income.  The court will not preclude Defendants from offering evidence as to statements Mr. Conti made when applying for unemployment benefits.  Depending on the evidence at trial, and depending on whether the court takes damage verdicts (advisory or otherwise) from the jury, the court may instruct the jury that Mr. Conti's collateral income is not relevant to their verdicts.  This ruling does not limit Defendants' right to file proper post-verdict briefing regarding whether any award to Mr. Conti should be offset because of collateral income he received.

**Q.      Immigration Status**

There is no way to conduct a trial on Mr. Conti's claims of national origin discrimination without entering evidence as to Mr. Conti's national origin and the national origin of his comparators at CSG.  Among those comparators is Mr. Conti's daughter, Tiffany Baustert.  Ms. Baustert was born in the United States, and her parents apparently took her to Colombia shortly thereafter.  If the summary judgment motions were any indication, Ms. Baustert's upbringing may be relevant at trial because it may explain why she speaks unaccented English whereas her father does not.  The court will not preclude that evidence.  It cautions Defendants, however, that if they in any way

ORDER – 10

suggest Mr. Conti and his wife acted improperly by coming to the United States to give birth to Ms. Baustert or their second daughter, the court will impose monetary sanctions and will consider entering default against them.

The court urges the parties to confer to determine if they can reach a stipulation that will ensure that the jury receives relevant information about Ms. Baustert's origin and language acquisition in a manner that poses no risk of prejudice.

**R.    Mr. Conti's Salary or Wages at Past Jobs**

Unless Defendants receive the court's explicit permission, they may not introduce evidence of Mr. Conti's pay at jobs prior to his work at CSG.  That evidence is likely irrelevant to any issue before the jury.  That Mr. Conti may have been paid less before he worked at CSG has no obvious bearing on either front pay or back pay following his termination.  The court will not preclude Defendants from making an offer of proof outside the presence of the jury, but they will have to make a substantially better showing as to the relevance of Mr. Conti's prior wages or salary.

**S.    Sibling Relationship Between Defendant Jay Leon and Defense Counsel Catherine Leon**

The court finds no reason to inform the jury that Mr. Leon and Ms. Leon are siblings, and accordingly grants this part of Mr. Conti's motion in limine.

**T.    Mr. Conti's Comparators**

The court denies the final part of Mr. Conti's motion, which seeks an affirmative ruling that he may introduce evidence regarding his peers at CSG.  He does not specify what evidence he wishes to admit and he does not convince the court that there is any reason to make an advance ruling.

### III.   DEFENDANTS' MOTION IN LIMINE

**1.    Mr. Conti's Failure to Preserve Evidence Relevant to Mitigation of Damages**

Defendants contend that Mr. Conti has not preserved all evidence of his efforts to seek other employment, and that the court should therefore preclude him from requesting

ORDER – 11

damages.  The court disagrees.  If Mr. Conti lacks evidence to substantiate claims that he has made reasonable attempts to find comparable employment since CSG fired him, CSG will be able to point that out when it examines Mr. Conti.

**2.    Mr. Conti's Emotional Distress Damages**

Mr. Conti apparently refused to respond substantively to discovery requests about his medical treatment, including mental health treatment.  Defendants, for their part, did not move to compel responses.  The court therefore need not decide if Mr. Conti's discovery responses properly invoked any privilege protecting communications between health care providers and their patients.  Defendants will not use trial to litigate a dispute that they should have raised before the close of discovery.

Even if a privilege applies, nothing prevents Defendants from asking if Mr. Conti received medical treatment for any distress he experienced as a result of his dispute with CSG.  Defendants may also explore whether Mr. Conti experienced other stressors (including health-related stressors) that might have contributed to his emotional distress.  The court doubts it will be necessary to inquire into the content of communications between Mr. Conti and any medical provider.  If Defendants demonstrate otherwise, the court will determine if any privilege protects those communications.

This ruling also disposes of Part O of Mr. Conti's motion in limine, in which he asks the court to exclude evidence of his medical history.  To the extent he suggests that *all* evidence about his health or health care is protected by a privilege, he is mistaken.  To the extent that evidence about his health or health care is relevant, Defendants may introduce it at trial.  Again, the court has no reason to expect that it will be necessary to inquire into Mr. Conti's communications with medical providers, which are arguably privileged.  The court will rule on the applicability of a privilege only if necessary.

ORDER – 12

**3.    No Need for Expert Testimony as to Front Pay or Lost Benefits**

There is no requirement that Mr. Conti support any request for front pay or lost benefits with expert testimony.  If Mr. Conti or another witness attempts to offer testimony beyond the ken of a lay witness as to his damages, Defendants may object.

**4.    Mr. Conti's Eviction**

Before Mr. Conti may present evidence about his eviction from his rental housing, he must make an offer of proof.  That offer of proof must convince the court that there is a basis for a jury to conclude that Defendants' actions caused Mr. Conti's eviction.  If there is, then Mr. Conti may present evidence of the eviction to support his damage claim.

**5.    Mr. Conti's Coworker's Opinions of His and His Comparators' Job Performance**

The court will not prevent Mr. Conti from presenting otherwise admissible evidence regarding his coworkers' opinions of his job performance or of the job performance of his comparators.  There is no reason for the court to conclude that those opinions are beyond the scope of permissible opinion testimony from a lay witness, any more than the court could conclude that Mr. Conti's supervisors' opinions of his and his comparators' performance were impermissible opinion testimony.

**6.    Evidence that CSG Disciplined Mr. Conti's Comparators**

The court will not bar Mr. Conti from presenting evidence that his comparators at CSG were disciplined.  That evidence is at least arguably relevant to Mr. Conti's contention that he was treated less favorably than his comparators despite his better job performance.  Defendants offer nothing from which the court could conclude that this evidence is unfairly prejudicial or otherwise inadmissible despite its relevance.

Defendants repeat an unsuccessful argument from their summary judgment motions: that this case is different than a typical discrimination case because CSG eliminated Mr. Conti's position as part of a reorganization of the business.  Defendants

ORDER – 13

are free to argue at trial that their decision to demote Mr. Conti was dictated by business needs, but Mr. Conti is free to argue that they chose to demote him rather than others for discriminatory reasons.  For that reason, he is free to offer admissible evidence to show that others at CSG who were less qualified (or who had received discipline) were treated more favorably.

**7.     Evidence Regarding CSG's Indemnification of the Individual Defendants**

The court denies Defendants' request to exclude evidence or argument that CSG has agreed to pay any individual Defendant's litigation costs or adverse judgment.  This request seems most relevant to Ms. Gardner, who is no longer a CSG employee.  If CSG has provided her with a defense or agreed to pay an adverse judgment, that is probative of her potential bias.  If she testifies, the court will permit Mr. Conti to ask her a few yes-or-no questions about whether CSG has agreed to pay her litigation costs and whether CSG asked for anything from her in exchange for that agreement.  Unless her answers to those questions suggestion a reason for a more detailed inquiry, Mr. Conti may ask no more questions.

**8.     Excluding Declarations from Evidence**

Defendants request that the court exclude all "evidence, testimony, argument, or reference to any declarations by witnesses . . . ."  The court cannot grant that request.  Defendants concede that anyone may use a witness's past declaration for impeachment, and it would be difficult to do so without making a "reference" to the declaration.  Mr. Conti contends that he may also introduce the declarations into evidence to refresh a witness's recollection or via the exception for recorded recollections at Federal Rule of Evidence 803(6).  Material used to refresh recollection is never introduced into evidence unless it is separately admissible.  Mr. Conti makes no effort to demonstrate that any declaration in this case falls within the scope of Rule 803(6).  The court declines to make

ORDER – 14

any advance ruling on the use of declarations.  The Federal Rules of Evidence apply, and the court will apply them on a proper objection from any party.

**9.      References to Court's Prior Orders**

Unless the court gives express permission, no party will refer to any of the court's pretrial rulings in front of the jury.

**10.      Race Discrimination Claim**

The parties are still, on the eve of trial, unable to reach agreement on whether Mr. Conti is actually pursuing a claim of race discrimination.  As the court noted in its summary judgment order, it can be difficult to distinguish racial discrimination from national origin discrimination.  SJ Ord. at 11-12.  To complicate matters further, Title VII expressly forbids discrimination both on the basis of race and on the basis of national origin, whereas 42 U.S.C. § 1981, which Mr. Conti has also invoked, expressly applies only to race.  *Id.* at 11.  Courts have, however, construed § 1981 to apply to national origin as well.  *Id.*  The court will not artificially separate the related concepts of racial and national origin discrimination.  If Defendants wished to eliminate race discrimination (as opposed to national origin discrimination) from this case, they should have sought summary judgment on that issue long ago.

**11.      Evidence Regarding CSG's 2013 Sale of Its Call Center Business**

As the court understands it, CSG sold or transferred its call center business to another entity earlier this year.  Defendants ask the court to preclude evidence of that transaction.  That transaction occurred about three years after CSG fired Mr. Conti, and would thus seem to have little relevance.  The court has already rejected Mr. Conti's request to amend his complaint to add a claim that CSG arranged the transaction to protect itself from an adverse judgment.  Mr. Conti will not elicit testimony regarding the reasons for that transaction unless he receives the court's express permission.  Similarly,

ORDER – 15

1    he may not argue that CSG made that transaction to avoid an adverse judgment unless the

2    court grants him permission.

3            The court finds no reason to prohibit the parties from introducing evidence of that

4    transaction for other purposes.  It seems a bad idea for the parties to waste jury resources

5    discussing a business transaction that came three years after CSG fired Mr. Conti, but the

6    parties may believe otherwise.  Mr. Conti suggests that CSG wishes to argue that Mr.

7    Conti's front pay should be limited because the call center work he performed no longer

8    exists at CSG.  If that is the case, he could present evidence that CSG's call center

9    employees continued in their jobs after the transaction.  Again, the court cannot imagine

10   why the parties would spend any trial time presenting this evidence, but the court leaves

11   the choice to them.

12   **12.    Evidence that Defendants Previously Had Different Lawyers**

13           The court will not prohibit evidence that Defendants used different lawyers in the

14   early stages of this dispute.  If nothing else, it is possible that one or more witnesses may

15   mention previous counsel in passing.  Mr. Conti suggests that he may inquire into the

16   issue because CSG shared its prior counsel with Microsoft, which is somehow indicative

17   of collusion.  This seems far-fetched, to say the least, but again, the court finds no reason

18   to prohibit Mr. Conti from using his limited trial time to explore this issue.  Defendants

19   have not identified any particular prejudice that they would suffer if the jury learns that

20   they previously used different lawyers.

21   **13.    Limited Bifurcation to Assess the Amount of Punitive Damages**

22           The court will, if necessary, conduct a separate phase of the trial to determine a

23   punitive damages award.  In the verdict form that the jury will receive at the end of the

24   first phase of trial (which will resolve every jury issue except the amount of punitive

25   damages), the jury will be asked (in the event they find in Mr. Conti's favor on a claim

26   for which punitive damages are available) whether Mr. Conti has met the applicable

27

28   ORDER – 16

standard for punitive damages as to each Defendant.  If the jury's answer is yes, the court will immediately began a second phase of the trial, with the same jury, where Mr. Conti will present evidence to justify a particular punitive damage award.  At that time, and only at that time, may Mr. Conti call witnesses or present evidence regarding the financial status of any Defendant.  The second phase may also present an opportunity to present evidence regarding Defendants' conduct that would be irrelevant during the first phase of the trial.  The court imposes this limited bifurcation to avoid using jury time during the first phase to discuss any Defendant's financial status or other issues that are relevant only to a punitive damage award.  No attorney or witness shall mention the possibility of a second phase of trial, and no attorney or witness shall mention the possibility of punitive damages until the second phase of trial, if it occurs.

### IV.  CONCLUSION

For the reasons stated above, the court GRANTS in part and DENIES in part the parties' motions in limine.  Dkt. ## 107, 110.  The court GRANTS the parties' stipulated motion in limine (Dkt. # 106), and dismisses Derek Anderson as a party in accordance with his stipulation (Dkt. # 102) with Mr. Conti.

DATED this 20th day of November, 2013.

The Honorable Richard A. Jones
United States District Court Judge

ORDER – 17